# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CHASTITY VALDEZ,

      Plaintiff,

v.                                                                    Civ. No. 20-1263 RB/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

      Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Chastity Valdez's "Motion to Remand or Reverse Agency Decision" [ECF 27] ("Motion"). The Motion is fully briefed. ECFs 28 (brief in support), 32 (response), 33 (reply). Having meticulously reviewed the entire record and the parties' briefing, and for the following reasons, the Court hereby recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant case be **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

Plaintiff is 32 years old and lives with her parents and her two dogs. Administrative Record ("AR") at 39–41. Plaintiff completed school through the ninth grade and does not have any past relevant work experience. *Id.* at 28, 39–40. In May 2018, Plaintiff filed an application for Supplemental Security Income, alleging that she became disabled on March 14, 2007. *Id.* Her application was denied initially and on reconsideration. *Id.* Plaintiff alleged that she is disabled, as defined by the Social Security Act, because she suffers from bipolar disorder and attention-deficit/hyperactivity disorder ("ADHD"). *Id.* at 15, 103–104.[1] The Social Security Administration

---

[1] While Plaintiff initially alleged that she was disabled due to a combination of both physical and mental impairments,

("SSA") denied her application initially and on reconsideration.   At Plaintiff's request, Administrative Law Judge ("ALJ") Eric Weiss held a hearing on Plaintiff's case in January 2020. *Id.* At the hearing, Plaintiff amended her alleged onset date to May 4, 2018. *Id.* Based on the evidence in the record, the ALJ found that Plaintiff had "not been under a disability" as defined in the Social Security Act "since May 4, 2018," her alleged onset date. *Id.* at 29. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1. In December 2020, Plaintiff filed the instant action, seeking reversal of the ALJ's decision. ECF 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff argues that the ALJ erred at steps four and five of the sequential evaluation process. Plaintiff contends that the ALJ erred at step four by finding that she had the residual functional capacity ("RFC")[2] to maintain concentration, persistence, and pace for two hours at a time during the workday with normally scheduled breaks. ECF 28 at 8–9. Plaintiff insists that this finding was not supported by medical opinion evidence. *Id.* Plaintiff asserts that the ALJ also erred at step five by failing to resolve an apparent conflict between the RFC and the Dictionary of Occupational Titles ("DOT") descriptions of the representative occupations the vocational expert testified that Plaintiff could perform. *Id.*[3]

---

she does not contest in this appeal the ALJ's findings or decision concerning her physical impairments. ECF 28 at 2. Consequently, the Court's discussion of the ALJ's decision and the Administrative Record is limited only to Plaintiff's alleged mental impairments.

[2] The RFC is an assessment of the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1).

[3] This portion of Plaintiff's opening brief is exceptionally cryptic. Plaintiff wrote that the ALJ "failed to adhere to Haddock," but did not provide a citation to "Haddock" or even explain what "Haddock" required the ALJ to do. *See* ECF 28 at 10–11. Based on Plaintiff's block quotation of SSR 00-4p, 2000 WL 1898704 (requiring ALJs to inquire further into a vocational expert's testimony if that testimony is inconsistent with the Dictionary of Occupational Titles), the Court assumes that Plaintiff's reference to "Haddock" refers to *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999) (requiring an ALJ to elicit additional testimony from a vocational expert if the vocational expert's testimony conflicts with the Dictionary of Occupational titles).

## III.  STANDARD OF REVIEW

### A.  Substantial Evidence

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no

3

substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See*

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

## IV. ALJ'S FINDINGS AND DECISION

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, May 4, 2018. AR at 17. At step two, the ALJ found that Plaintiff was severely impaired by "mood disorder, not otherwise specified," ADHD, bipolar disorder, communication disorder, and somatic symptom disorder. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of a "listed" impairment. *Id.* at 19.[4]

---

[4] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id*.

**B.  Step Four[5]**

"After careful consideration of the entire record," the ALJ found that Plaintiff had the mental RFC to: "understand, remember, and carry out simple instructions and make commensurate work-related decision in a work setting with few workplace changes," "occasionally interact with supervisors and co-workers, but little, if any, interaction with the public," and "maintain concentration, persistence, and pace for two hours at a time during the workday with normally scheduled breaks." *Id.* at 22. In making this finding, the ALJ considered Plaintiff's account of the limiting effect of her symptoms, the objective medical evidence, and the medical opinion evidence.

Plaintiff reported that she had a bad temper, difficulty concentrating, and trouble reading. *Id.* Plaintiff further claimed that she suffered from severe migraines three to four times per week. *Id.* at 23 (citing *id.* at 284–91). Additionally, Plaintiff alleged that she had difficulty remembering and understanding, following instructions, completing tasks, reading, concentrating, handling stress and change, and managing her mood. *Id.* (citing *id.* at 284–91). Plaintiff's activities of daily living included paying bills, shopping, spending time with friends and family, watching television and videos on her phone, playing games, and caring for her pets. *Id.* at 25.

Next, the ALJ considered whether the objective medical evidence supported Plaintiff's account of her symptoms. The ALJ noted that Plaintiff was diagnosed with mental impairments before her alleged onset date. *Id.* at 23 (citing *id.* at 381). Plaintiff was repeatedly observed as having difficulty communicating and was described as "not fully reliable." *Id.* at 23–24 (citing *id.* at 429). An examining psychologist estimated that Plaintiff had below average intelligence and "borderline

---

[5] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

intellectual inabilities." *Id.* (citing *id.* at 429). Importantly, however, Plaintiff's symptoms associated with her bipolar disorder and ADHD were described as "stable" and well controlled with medication. *Id.* at 24 (citing *id.* at 503, 511, 525, 644, 648). Considering this information, the ALJ found that the "extent of [Plaintiff's alleged] mental limitations [were] not entirely consistent with the evidence." *Id.* at 25.

The ALJ then considered the relevant medical opinion evidence. State agency psychological consultant, Scott Walker, MD, assessed Plaintiff's mental limitations at the initial level. *Id.* at 113. Dr. Walker opined that Plaintiff had moderate limitations in "understanding and memory," "sustained concentration and persistence," "social interactions," and in "adaption." *Id.* at 113–15. Dr. Walker concluded that Plaintiff could "perform basic work-like tasks where interpersonal contact [was] incidental to tasks performed and where the complexity of tasks [was] learned and performed by rote, involving few variables, little judgment, supervision that [was] simple, direct and concrete." *Id.* at 115. The ALJ found Dr. Walker's opinion "generally persuasive" because it was "supported by reference to the medical evidence and [was] generally consistent with the longitudinal evidence of record." *Id.* at 26 (citing *id.* at 418–26, 511, 525, 648). The ALJ, however, found Dr. Walker's opinion on Plaintiff's ability to understand, remember, and carry out tasks to be more restrictive than the record supported. *Id.* (citing *id.* at 503, 525, 646, 648).

On reconsideration, state agency psychological consultant Ryan Jones, PhD, opined that Plaintiff had marked limitations in understanding, remembering, and carrying out *detailed* instructions. *Id.* at 130–31. Additionally, Dr. Jones concluded that Plaintiff had several moderate limitations in concentration and persistence, social interaction, and adaption. *Id.* at 131–32. In the narrative portion of his opinion, Dr. Jones opined that Plaintiff had the mental RFC to understand, recall, concentrate, perform simple repetitive tasks, interact appropriately with coworkers and

supervisors to learn tasks, accept criticism, and attend meetings. *Id.* at 132. He found, however, that Plaintiff would be unable to interact appropriately or tolerate contact with the public and would be required to work in a "usually stable work situation." *Id.* Dr. Jones therefore concluded that Plaintiff should be restricted to performing basic work-like tasks where interpersonal contact was incidental and where the complexity of tasks was learned and performed "by rote, involving few variables, little judgment; supervision that is simple, direct and concrete." *Id.* at 132. As with his assessment of Dr. Walker's opinion, the ALJ found Dr. Jones's opinion "generally persuasive" because it was supported by citations to the evidence and was generally consistent with the record. *Id.* at 26 (citing 418–26, 502–29, 649). Similar to his assessment of Dr. Walker's opinion, however, the ALJ found that Dr. Jones's opinion on Plaintiff's ability to understand, remember, and carry out tasks was more limiting than what the evidence in the record supported. *Id.* at 26.

Last, the ALJ addressed the opinion of John Koewler, PhD, who examined Plaintiff at the state agency's request in June 2015. *Id.* at 327. Dr. Koewler noted that Plaintiff's "[v]erbal articulation was normal" but that her communication "ability was below average." *Id.* at 328. Additionally, Dr. Koewler reported that Plaintiff was "logical and coherent" and did not suffer from a "thought disorder." *Id.* at 328. Dr. Koewler further opined that Plaintiff's "[i]ntellectual ability [was] below average, possibility in the borderline range." *Id.* at 329. Dr. Koewler concluded that Plaintiff was markedly limited in understanding and remembering detailed or complex instructions as well as working without supervision. *Id.* Dr. Koewler also found that Plaintiff was moderately to markedly limited in attending and concentrating. *Id.* And last, Dr. Koewler opined that Plaintiff was moderately limited in carrying out instructions, interacting with the public, coworkers, and supervisors, adapting to changes in the workplace, and using public transportation. *Id.* The ALJ found the entirety of Dr. Koewler's opinion unpersuasive because it was not internally consistent,

did not include citations to the record, and was generally inconsistent with the record. *Id.* at 27.

Because Plaintiff did not have any past relevant work, the ALJ moved to step five of the sequential evaluation process to consider whether a person with Plaintiff's RFC could perform work reasonably available in the national economy. *Id.*

### C. Step Five

Plaintiff was 28 years old at the time of her alleged onset date. *Id.* at 28; *see generally* 20 C.F.R. 416.963 ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work."). Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the representative occupations of dishwasher (146,000 jobs nationally),[6] automobile detailer (40,000 jobs nationally),[7] cleaner (220,000 jobs

---

[6] The DOT defines a dishwasher as an individual who "[p]erforms any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food." DOT 318.687-010, 1991 WL 672755.

[7] The DOT defines an automobile detailer as an individual who "[c]leans and refurbishes new and used automobiles, performing any combination of following duties: Washes vehicle exterior to clean cars, using cleaning solution, water, cloths, and brushes. Applies wax to auto body, and wipes or buffs surfaces to protect surfaces and preserve shine, using cloth or buffing machine. Vacuums interiors of vehicles to remove loose dirt and debris, using vacuum cleaner. Cleans upholstery, rugs, and other surfaces, using cleaning agents, applicators, and cleaning devices. Applies revitalizers and preservatives to vinyl or leather surfaces, and treats fabrics with spot and stain resistant chemicals to preserve and protect interior components. Cleans engine and engine compartment with steam cleaning equipment and various cleaning agents to remove grease and grime. Applies special purpose cleaners to remove foreign materials which do not respond to normal cleaning procedures, utilizing experience and following recommendations of product manufacturer. Paints engine components and related parts, using spray gun or aerosol can and masking material. Applies paint to chipped body surfaces of vehicle, using container of touchup paint. Applies dyes and reconditioning chemical to vinyl tops of vehicle to restore color and condition." DOT 915.687-034, 1991 WL 687878.

nationally),[8] and merchandise marker (120,000 jobs nationally).[9] *Id.* at 28–29. The ALJ found that

the vocational expert's testimony was consistent with the DOT, but made the following observation:

> [t]he DOT does not specifically address the breakdown between interaction with supervisors, coworkers, and the public. At the hearing, the vocational expert considered the interaction provision in determining the number of jobs available in the national economy. The vocational expert testified this opinion was based on her years of professional experience. The vocational expert's testimony is uncontradicted, and the [Plaintiff's] representative did not object to the testimony regarding the interaction provision. Therefore, the undersigned accepts the vocational expert's testimony based on her education, training, and years of experience in the field when addressing this variance with the DOT.

*Id.* at 29.[10] Because the ALJ concluded that Plaintiff could work in occupations that exist in

significant numbers in the national economy, the ALJ found that she had not been under a disability,

as defined by the Social Security Act, since the date of her alleged disability onset date. *Id.*

## V.   ANALYSIS

The Court holds that the ALJ did not commit reversible error either (1) in finding that

Plaintiff had the capacity to maintain concentration, persistence, and pace for two hours a time

during the workday with scheduled breaks or (2) in considering the vocational expert's testimony.

---

[8] The DOT defines a cleaner as an individual who "[c]leans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.)." DOT 323.687-014, 1991 WL 672783.

[9] The DOT defines a merchandise marker as an individual who "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine." DOT 209.587-034, 1991 WL 671802.

[10] Plaintiff challenges this characterization of the vocational expert's testimony because the ALJ excerpted testimony that did not appear in the transcript of the hearing. ECF 28 at 10.

**A. The ALJ Was Not Required to Find that Plaintiff Was More Limited in Her Ability to Maintain Concentration, Persistence, and Pace**

Plaintiff argues that because Drs. Walker and Jones opined that she was at least moderately limited in her ability to maintain concentration, persistence, and pace, the ALJ erred by not accounting for such a limitation in the RFC. ECF 28 at 8–9; *see generally* AR at 114 (Dr. Walker opining that Plaintiff had moderate limitations and one marked limitation in concentration and persistence), 132 (Dr. Jones opining that Plaintiff had moderate limitations and one marked limitation in concentration and persistence).

Generally, an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. *Haga v. Astrue*, 482, F.3d 1205 (10th Cir. 2007). At the same time, however, an ALJ *is* entitled to resolve conflicts in the record. *Id.* Indeed, it is the ALJ, not a physician or psychologist, who is charged with formulating the RFC. *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). On this point, the Tenth Circuit has affirmatively rejected the notion that the components of an RFC lack substantial evidence unless they line up perfectly with an expert medical opinion. *Chapo*, 682 F.3d at 1289. In fact, the Tenth Circuit has rejected the argument that "there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949. In this case, the ALJ appropriately accounted for Drs. Walker and Jones's opinions on Plaintiff's ability to maintain concentration and pace.

As is typical for state agency consultants, Drs. Walker and Jones gave their opinions using a form document. *See* AR at 113, 130. On both forms, a section titled "MRFC1" presented the document preparer with "questions" to "*help* determine the [claimant's] ability to perform sustained work activities." *Id.* (emphasis added). These questions asked Drs. Walker and Jones to assess

Plaintiff's ability to engage in certain work-related tasks by identifying the degree to which she would be limited in each area. *See id.* In this case, Drs. Walker and Jones noted that Plaintiff would be at least moderately limited in sustaining concentration and persistence. *Id.*

Notably, however, the answers to these types of questions were *not* Drs. Walker's and Jones's actual opinions, as their opinions were recorded in the *narrative* section. *Id.* at 113, 130. Indeed, the Tenth Circuit, this Court, and other courts in this District have repeatedly emphasized that it is the narrative portion of a form document that makes up a state agency consultant's opinion, *not* that doctor's notations of moderate limitations. *See Rush v. Saul*, 389 F. Supp.3d 957, 969 (D.N.M. 2019) (explaining Tenth Circuit case law holding that when a medical source "fashions an RFC in his narrative opinion, that controls over any moderate worksheet limitations because the worksheet serves as an 'aid' to an opinion and is not the opinion itself."); *see also Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016); *Munoz v. Kijakazi*, Civ. No 20-245 GJF, 2021 WL 4290176, at *8 (D.N.M. Sept. 21, 2021) (same).

In this case, Dr. Walker did not even opine on Plaintiff's potential limitations in concentration and task persistence in the narrative portion of his opinion. *See AR at 115. Instead, his assessment focused on task *complexity* by restricting Plaintiff to performing only "basic work-like tasks" and "where the complexity of tasks is learned and perform by rote, involving few variables, [and] little judgment." AR at 115. For his part, Dr. Jones opined that Plaintiff could "understand, recall, concentrate and perform simple repetitive tasks." *Id.* at 132. The Court thus finds that the ALJ appropriately accounted for Dr. Jones's opinion by limiting Plaintiff to work that required her at most to "carry out simple instructions and make commensurate work-related decisions in a work setting with few workplace changes." *Id.* at 22, 132. By the same virtue, the Court finds that the ALJ adequately accounted for Dr. Walker's opinion by limiting Plaintiff to

carrying out simple instructions and making simple work-related decisions. *Id.* at 22, 115.

**B. The ALJ Did Not Err at Step Five**

Plaintiff argues that the ALJ made two errors at step five. First, she contends that the ALJ "failed to assess the inconsistency of having [1] 'moderate' impairment [sic] in the ability to accept instructions and respond appropriately to criticism from supervisors [and] [2] the ability to sustain an ordinary routine without *special supervision*." ECF 28 at 10 (internal quotation marks omitted) (emphasis in original). Second, Plaintiff asserts that the ALJ erred by describing (and relying on) certain testimony from the vocational expert that is entirely absent from the hearing transcript.

At step five, in deciding whether a claimant can adjust to other work, the SSA must supply evidence of work that exists in significant numbers in the national economy that the claimant can do, considering her RFC. 20 C.F.R. § 416.966(b). The ALJ need not account, however, for whether work exists in the geographical area in which the claimant resides, whether a specific job vacancy exists, or even whether the claimant would be hired if she applied to one of the identified occupations. 20 C.F.R. § 416.966 (c)(1)-(8). But the SSA will not deny disability status if the qualifying jobs exist "only in very limited numbers in relatively few locations outside the region where [the claimant] live[s]." 20 C.F.R. § 416.966(b). For this determination, the SSA may rely on publications such as the DOT, *see* 20 C.F.R. § 416.966(d)(1)-(5), as well as vocational or other expert testimony. 20 C.F.R. § 404.1566(e).

But not everything a vocational "expert says will suffice to meet the agency's burden of proof." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1162 (2019) (Gorsuch, J., dissenting). Indeed, the Tenth Circuit has held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT] and elicit

a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1086–87 (10th Cir. 1999). The Tenth Circuit later clarified that *Haddock*'s holding extends to nonexertional limitations. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). Put simply, an ALJ is required to elicit a reasonable explanation from the vocational expert that resolves any "apparent conflict" between (1) the RFC that the vocational expert relied on and (2) the DOT. *Id.* at 1174–76; *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between the [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.").

In this case, however, the *precise* conflict that Plaintiff perceives between the DOT and the vocational expert's testimony that she challenges is unclear. *See* ECF 28 at 10. Plaintiff argues that there is a logical conflict between her having a "moderate" impairment in the ability to accept instructions and respond appropriately to criticism from supervisors while at the same time requiring special supervision to sustain task persistence. ECF 28 at 10. Plaintiff's argument, however, includes *no* citation to the record (or otherwise) supporting even the *existence* of either of these limitations, leaving the Court perplexed about their origins. *See id.* Indeed, neither the RFC nor the hypothetical individual submitted to the vocational expert included *either* of those limitations. AR at 22, 51–52. In fact, the *only* supervisory limitation the ALJ found Plaintiff to have was being limited to "occasionally interact[ing] with supervisors and coworkers, with little, if any, interaction with the public." AR at 22, 52. And, notably, *none* of the DOT descriptions for *any* of the representative occupations identified by the vocational expert included *any* special supervisory demands. *See* DOT 318.687-010, 1991 WL 672755 (Dishwasher requiring "not significant" taking of instructions); DOT 915.687-034, 1991 WL 687878 (Automobile Detailer requiring "not

significant" taking of instructions); DOT 323.687-014, 1991 WL 672783 (Cleaner requiring "not significant" taking of instructions); DOT 209.587-034, 1991 WL 671802 (Merchandise Marker requiring "not significant" taking of instructions).

Because it was Plaintiff's burden to establish that there was an apparent conflict between the vocational expert's testimony and the DOT, and because she has failed to establish such a conflict, the Court rejects Plaintiff's challenge on this point. *C.f. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the party seeking to have an agency decision set aside because of an erroneous ruling carries the burden of showing that prejudice resulted); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those … contentions that have been adequately briefed for our review." (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004))).

Next, Plaintiff takes issue with the following language in the ALJ's step five finding:

> [T]he vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the DOT does not specifically address the breakdown between interaction with supervisors, coworkers, and the public. At the hearing, the vocational expert considered the interaction provision in determining the number of jobs available in the national economy. The vocational expert testified this opinion was based on her years of professional experience.

ECF 28 at 10–11 (quoting AR at 22). It is true, as Plaintiff says, that the transcript of the hearing did not include the vocational expert specifically stating that she considered Plaintiff's limitation in interacting with different groups of individuals (i.e., coworkers, supervisors, and the public). *See* AR at 54–56. But aside from pointing out this error, Plaintiff has not explained how the ALJ's inclusion of that statement was *harmful*. *See* ECF 28 at 10–11.[11] Although Plaintiff argues that the ALJ violated *Haddock* by failing to elicit additional testimony from the ALJ, she has not identified

---

[11] This Court believes the ALJ's inclusion in his written decision of a description of testimony the vocational expert did not give was inadvertent and ultimately inconsequential. In the modern era, such cut-and-paste errors in a high-volume industry like the SSA's administrative hearing process, however regrettable, are not altogether unexpected.

an apparent conflict between the vocational expert's testimony about the interaction between such groups of individuals and the DOT (which, according to the ALJ, does not address such interactions) such that the ALJ's obligation to elicit additional testimony would have been triggered. *See Haddock* 196 F.3d at 1087.

In sum, because Plaintiff has failed to identify *any* conflict between the vocational expert's testimony and the DOT, the Court holds that the ALJ did not violate the Tenth Circuit's holding in *Haddock*.

## VI.  CONCLUSION

The ALJ applied the correct legal standards and his findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.