UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

CHASTITY VALDEZ,

    Plaintiff,

v.                                                                                                   Civ. No. 20-1263 RB/GJF

KILOLO KIJAKAZI, *Acting Commissioner of*
*the Social Security Administration*,

    Defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on United States Magistrate Judge Gregory J. Fouratt's Proposed Findings and Recommended Disposition (PFRD) (Doc. 35), Plaintiff's Objections (Doc. 36, and Defendant's response to those objections (Doc. 37). For the following reasons and after having conducted a de novo review of the relevant portions of the record, the Court hereby overrules Plaintiff's Objections and adopts the PFRD.

**I.**    **BACKGROUND**

Plaintiff is 32 years old and lives with her parents and her two dogs. (Administrative Record ("AR") at 39–41.) Plaintiff completed school through the ninth grade and does not have any past relevant work experience. (*Id.* at 28, 39–40.) In May 2018, Plaintiff filed an application for Supplemental Security Income, alleging that she became disabled on March 14, 2007. (*Id.* at 15.) Her application was denied initially and on reconsideration. (*Id.*) Plaintiff alleged that she is disabled because she suffers from bipolar disorder and attention-deficit/hyperactivity disorder (ADHD). (*Id.* at 15, 103–104.) The Social Security Administration (SSA) denied her application initially and on reconsideration. (*Id.* at 15.) At Plaintiff's request, Administrative Law Judge (ALJ) Eric Weiss held a hearing on Plaintiff's case in January 2020. (*Id.* at 37.) At the hearing, Plaintiff

amended her alleged onset date to May 4, 2018. (*Id.* at 38.) Nonetheless, based on the evidence in the record, the ALJ found that Plaintiff had "not been under a disability" as defined by the Social Security Act since May 4, 2018. (*Id.* at 29.) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (*Id.* at 1.)

In December 2020, Plaintiff filed the instant action, seeking reversal of the ALJ's decision. (Doc. 1.) In January 2022, pursuant to the Court's "Order of Reference Relating to Social Security Appeals" (Doc. 17), Judge Fouratt issued his PFRD, which recommended that the Commissioner's final decision be affirmed. (Doc. 35 at 16.)

## II.   ISSUES

Plaintiff now objects to the PFRD, arguing that (1) the ALJ's decision was inconsistent with *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999); and (2) the ALJ erred by citing to and relying on vocational expert testimony that was not found in the hearing transcript.

## III.   STANDARD OF REVIEW

To preserve an issue for review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In reviewing such objections, the district court must "make a de novo determination of those portions of the [report and recommendation] . . . to which objection is made." 28 U.S.C. § 636(C); *see also* Fed. R. Civ. P. 72(b)(3). The district court is not, however, required to "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000) (holding that a district court's "terse" order, containing only one sentence for each claim, was still "insufficient to demonstrate that the court failed to review the magistrate's recommendation *de novo*").

2

Consequently, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) (noting that "in the exercise of [its] sound judicial discretion," the district court may place "whatever reliance" it chooses to place on a magistrate judge's recommendation).

## IV.     DE NOVO REVIEW

### A.     PFRD Background

In her "Brief in Support of Motion to Remand," Plaintiff argued that the ALJ's decision violated *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999). (Doc. 28 at 10–11.) Specifically, Plaintiff took issue with the following portion of the ALJ's hearing decision:

> Pursuant to SSR 00-4p, … the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the DOT does not specifically address the breakdown between interaction with supervisors, coworkers, and the public. *At the hearing, the vocational expert considered the interaction provision in determining the number of jobs available in the national economy. The vocational expert testified this opinion was based on her years of professional experience.*

(AR at 29 (emphasis added).) The vocational expert, however, did *not* testify (either "based on her years of professional experience" or otherwise) on the interaction provision (i.e., the degree to which Plaintiff would be able to interact with supervisors, coworkers, and the public). (*See id.* at 51–56.) Plaintiff argued that the ALJ's use of such testimony showed that the ALJ "seem[ed] to have realized" an inconsistency between the vocational expert's testimony and the DOT such that the ALJ was required to further investigate that apparent inconsistency." (Doc. 28 at 11.) Put differently, Plaintiff raised two potential step-five errors: (1) the ALJ failed to resolve an apparent inconsistency

3

between the vocational expert's testimony and the DOT as required by *Haddock* and (2) the ALJ cited to and then relied on testimony that the vocational expert did not give.

Addressing the first asserted error, Judge Fouratt observed that Plaintiff had failed to identify any inconsistency between the DOT and the vocational expert's testimony. (Doc. 35 at 14.) Plaintiff contended that the ALJ should have sought additional testimony on an apparent conflict between a "moderate impairment in the ability to accept instructions and respond appropriately to criticism from supervisors with the ability to sustain an ordinary routine without *special supervision*." (Doc. 28 at 10 (internal quotation marks omitted).) The PFRD, however, noted that Plaintiff did not identify where those purported limitations came from. (Doc. 35 at 14.) In fact, Judge Fouratt found that "neither [Plaintiff's Residual Functional Capacity ("RFC")] nor the hypothetical individual submitted to the vocational expert included either of those limitations." (*Id.* (citing AR at 22, 51–52).) He further explained that "*none* of the DOT descriptions for *any* of the representative occupations identified by the vocational expert included *any* special supervisory demands." (*Id.* (citing DOT 318.687-010, 1991 WL 672755; DOT 915.687-034, 1991 WL 687878; DOT 915.687-034, 1991 WL 687878; DOT 209.587-034, 1991 WL 671802).) Because Plaintiff did not identify an apparent conflict between the vocational expert's testimony and the DOT, the PFRD concluded that the ALJ was not required under *Haddock* to elicit further testimony from the vocational expert.

In considering Plaintiff's second argument, Judge Fouratt acknowledged that the ALJ erroneously included vocational expert testimony that apparently was never given but found that the inclusion was harmless and thus did not warrant remand. (Doc. 35 at 15–16.)

4

### B. Parties' Arguments

Plaintiff asserts that the ALJ's decision violated *Haddock* because he did not inquire into "the existence of any conflict between the RFC and the DOT." (Doc. 36 at 3.) Plaintiff insists that this error was harmful because if the ALJ had sought additional testimony, he could have found the vocational expert's testimony inconsistent with the DOT, which may have resulted in a finding that Plaintiff could not perform jobs that exist in significant numbers in the national economy. (*Id.* at 3–5 (citing *Poppa v. Astrue*, 596 F.3d 1167, 1174 (10th Cir. 2009)).)

Additionally, Plaintiff objects to the PFRD's conclusion that the ALJ's inclusion in his decision of testimony not given was harmless error. (*Id.* at 6–9.) Plaintiff argues that if the PFRD were affirmed, the Court's holding "would allow any 'high volume' administrative agency or court to use boiler plate [sic] language from other decisions or form templates claiming to have considered evidence which was in fact never adduced." (*Id.* at 7.) Plaintiff stresses that "[t]he Tenth Circuit has required rigorous adherence by ALJ's [sic] to preexisting legal rules." (*Id.*)

To Plaintiff's *Haddock* argument, the Commissioner responds that the ALJ complied with *Haddock* by confirming with the vocational expert that her testimony was consistent with the DOT. (Doc. 37 at 3 (citing AR at 53).) The Commissioner also emphasizes that, in any event, "Plaintiff failed to identify any conflict between the vocational expert's testimony and the DOT." (*Id.* (citing Doc. 35 at 15–16).)

In opposition to Plaintiff's position that the ALJ's inclusion of ungiven testimony was harmful, the Commissioner contends that "Plaintiff's arguments are speculative and fail to show harmful error." (*Id.* at 4 (citing *Shinseki v. Sanders*, 566 U.S. 396, 409 (2009)). The Commissioner also pushes back on Plaintiff's suggestion that harmless error analysis should not be applied to SSA

appeals, observing that "courts routinely apply harmless error when reviewing an ALJ's decision." (*Id.* at 5 (citing *Poppa*, 569 F.3d at 1172 n.5; *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Bowen v. Yuckert*, 482 U.S. 137, 157 (1987) (O'Connor, J., concurring)).)

### C. Analysis

Because Plaintiff's objections relate to two distinct types of alleged step-five errors, the Court addresses each in turn. First, the Court holds that the ALJ's hearing decision was consistent with *Haddock*. Second, the Court holds that the ALJ's citation to ungiven testimony was harmless error.

#### 1. The ALJ's decision was consistent with *Haddock*.

In *Haddock*, the Tenth Circuit held "that [an] ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." 196 F.3d at 1091. Similarly, SSR 00-4p directs that "[w]hen there is an apparent unresolved conflict between the [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2. Even where there is not an apparent conflict, however, an "adjudicator has an affirmative responsibility to ask about any possible conflict between the [vocational expert] evidence and information provided in the DOT." *Id.* at *4. In other words, the ALJ has two duties in this respect: (1) the ALJ must inquire as to whether the vocational expert's testimony is consistent with the DOT and (2) if there is an apparent conflict between expert testimony and the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." *See id.* at *4.

As the Commissioner has emphasized, the ALJ asked the vocational expert whether her testimony was consistent with the DOT. AR at 53 ("Q[:] Your testimony consistent with the DOT? A[:] Yes, your honor."). Thus, the ALJ complied with the requirement to affirmatively ask the vocational expert whether her testimony was consistent with the DOT.

Moving next to whether the ALJ was required to elicit additional testimony from the vocational expert, the Court holds that the ALJ had no such obligation. Importantly, *Haddock* does not require an ALJ to seek further testimony in every case; instead, an ALJ must only seek such a reasonable explanation if there first *appears* to be a conflict between the vocational expert's testimony and the DOT. *See Haddock*, 196 F.3d at 1091. For example, in *Haddock*, the Tenth Circuit held that an ALJ was required to investigate an apparent conflict in a vocational expert's testimony that an individual with the RFC "to perform sedentary work" could work in occupations that the DOT described as having either "light" or "heavy" exertional requirements. *Id.* at 1088.[1] Likewise, in *Hackett v. Barnhart*, 395 F.3d 1168, 1171, 1176 (10th Cir. 2005), the Tenth Circuit held that an ALJ was required to seek additional testimony from a vocational expert who testified that an

---

[1] The SSA defines these physical exertion categories as follows:

"Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

"Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to substantially all of these activities."

"Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."

individual limited to "simple and routine work tasks" could perform occupations described by the DOT as having a level-three reasoning requirement.[2] Here, however, Plaintiff has not advanced any apparent inconsistency between the vocational expert's testimony and the DOT. (*See* Docs. 28 at 10–11; 33 at 4–5.[3])

Plaintiff instead devotes much of her energy arguing that the ALJ's failure to elicit additional testimony was harmful. (*See* Doc. 36 at 4–9.) But Plaintiff misreads the PFRD. Judge Fouratt did not find that the ALJ's failure to elicit additional testimony was harmless error. (Doc. 35 at 13–15.) Instead, he found that the ALJ was simply not required to seek a reasonable explanation for an apparent conflict between the vocational expert's testimony and the DOT—because there was no such apparent conflict. (*See id.* at 15 ("Because it was Plaintiff's burden to establish that there was an apparent conflict between the vocational expert's testimony and the DOT, and because she has failed to establish such a conflict, the Court rejects Plaintiff's challenge on this point." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).[4])

---

[2] The DOT defines Level 3 Reasoning as requiring the abilities to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICTIONARY OF OCCUPATIONAL TITLES, APPENDIX C, 1991 WL 688702.

[3] Plaintiff argued that the ALJ was required to resolve an inconsistency between her having a moderate impairment in the ability to accept instructions and respond appropriately to criticism from supervisors with the ability to sustain an ordinary routine without special supervision. (Doc. 28 at 10.) The hypothetical individual submitted to the vocational expert, however, did not have either of these limitations and was instead limited "to occasionally interact[ing] with supervisors and coworkers." (AR at 51–52.) And Plaintiff does not argue that any of the occupations submitted by the vocational expert required more contact with supervisors than "occasional." (*See* Docs. 28 at 10; 36 at 1–6.) To be clear, the Tenth Circuit's *Haddock* holding is limited to the specific circumstance where a *vocational expert* testifies that a hypothetical individual can work an occupation that the *DOT* describes as requiring a capacity that the hypothetical individual lacks. This holding, however, does not extend to other types of inconsistencies in the record— *i.e.*, the holding only applies to inconsistencies between (1) the vocational expert's testimony and (2) the DOT.

[4] Plaintiff argues that the PFRD should not be adopted because it conflicts with the Tenth Circuit's holding in *Poppa v. Astrue*, 569 F.3d 1167, 1172–73 (10th Cir. 2009). (Doc. 36 at 5.) Plaintiff contends that *Poppa* is distinguishable from this case because in *Poppa* the Tenth Circuit "had the entire record before it to determine there was no conflict" and because "the purported VE evidence express in the ALJ['s] decision admits conflict[] that the DOT does not cover

8

### 2. The ALJ's erroneous reference to ungiven testimony was harmless.

The Tenth Circuit has "generally recognized the applicability of [harmless error] in the administrative review setting," "specifically app[lying] it in social security disability cases." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (citing *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002)). "To be sure," the Tenth Circuit applies "harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Under Tenth Circuit precedent, harmless error applies "where based on material the ALJ did at least consider (just not properly), we [can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145.

In this case, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. Plaintiff argues that the ALJ's inclusion in his decision of ungiven vocational expert testimony was harmful because such testimony was necessary to comply with *Haddock*. (Doc. 33 at 2 ("Plaintiff can only speculate that either the ALJ, or his writer, or both, determined, upon a review of the record, that such additional justifccation [sic] [of] the denial was necessary.").) Under *Haddock*, an ALJ is *only* required to seek additional testimony from a vocational expert if that expert's testimony *appears* to conflict with the DOT. *See Haddock*, 196 F.3d at 1091. As explained

---

social interaction impairment." (*Id.*) But this part of *Poppa*'s holding is not relevant to this case. In *Poppa*, the Tenth Circuit considered whether an ALJ erred by failing to confirm with the vocational expert that her testimony was consistent with the DOT. 569 F.3d at 1172. The Tenth Circuit held that the ALJ's failure was harmless error because the Tenth Circuit found that the vocational expert's testimony did not conflict with the DOT. *Id.* at 1173 ("Although we agree that the ALJ erred by not inquiring whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."). In the instant case, however, the ALJ *did* ask the vocational expert whether her testimony was consistent with the DOT. (AR at 53.)

*supra*, in this case, the ALJ did not have a duty to seek such an explanation. And because the ALJ was not required to seek such an explanation, his inclusion of testimony that was not given (but that could have potentially qualified as the type of explanation necessary to satisfy *Haddock*) was harmless.

Plaintiff contends that Tenth Circuit precedent requires the SSA to rigidly adhere to "preexisting legal rules" and that adopting the PFRD would equate to holding that "any 'high volume' administrative agency or court use boiler plate [sic] language from other decisions or form templates claiming to have considered evidence which was in fact never adduced at the hearing in question." (Doc. 36 at 7.) The Court disagrees with both points. First, the Tenth Circuit has applied harmless error analysis to step five errors. *See, e.g.*, *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (holding that an ALJ's step five error was harmless because the plaintiff did not challenge the ALJ's finding that she could work two occupations that existed in significant numbers in the national economy). Second, Tenth Circuit precedent does not support the notion that the type of cut and paste or scrivener's error at issue here—i.e., one that has no bearing on the ALJ's material factual findings, warrants remand. Indeed, the Tenth Circuit has held that "certain technical errors [a]re 'minor enough not to undermine confidence in the determination of th[e] case." *Allen*, 357 F.3d at 1145 (quoting *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). In fact, the Tenth Circuit has previously forgiven a scrivener's error, which is analogous to the copy and paste error at issue here, because the "error did not affect the outcome of the case." *Poppa*, 569 F.3d 1167, 1173 n.5 (10th Cir. 2009) ("The ALJ incorrectly stated that the surgeries took place in 'early 2004,' . . . but we

agree with the Commissioner that this was a mere scrivener's error and did not affect the outcome of the case.").

## V. CONCLUSION

Following its *de novo* review of the record, the Court agrees with the analysis and conclusions set forth in the PFRD.

**IT IS THEREFORE ORDERED** that Plaintiff's Objections (Doc. 36) are **OVERRULED** and that the PFRD (Doc. 35) is **ADOPTED** in its entirety.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion to Remand or Reverse Agency Decision (Doc. 27) is **DENIED**, and that this case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE